v. Desmond L. Maynard v. Cheryl Martin-Libord Good morning. And we will call Miss Maynard Hanfeld. Yes, Your Honor. May it please the Court, my name is Shawn Hanfeld and I represent the appellant in this case, Desmond Maynard. At this time, I would like to reserve three minutes for rebuttal. That request is granted. Thank you. Your Honor, this case presents two issues. The first is whether the District Court erred in affirming the lower court's determination that the appellee, Miss Libord's discharge, violated the Virgin Islands Wrongful Discharge Act. The second issue presented is whether the District Court erred in affirming the award of back pay. With respect to the first issue, the Virgin Islands Wrongful Discharge Act provides a basis, a lawful basis for Miss Libord's discharge. But isn't that a very difficult hurdle for you to overcome because the facts that were found indicated that her discharge was not justified? And isn't it difficult to overcome the factual determination of the labor board? Your Honor, I think the problem in this case is that the Department of Labor as well as the District Court found that there is no standard, no rule by which to determine the reasonableness of an employer's order. But the Virgin Islands Wrongful Discharge Act states that an employer can dismiss an employee if the employee intentionally and willfully disobeys a reasonable and lawful order of the employer. Now the facts in this case- But wasn't there a factual finding that she did not so disobey a reasonable order? Well, the factual finding was that Miss Libord did obey Mr. Maynard's order to sign the check in the form of a- However, the lower courts felt that the order was unreasonable because Miss Libord needed Mr. Maynard's signature on the check in order to verify proof of her income for a public assistance program, namely WIC.  Yes, that was the case. That was the case according to what Miss Libord testified to at the hearing. However, Miss Libord also testified at the hearing that at the time that she was boisterously refusing to sign the check to verify that she had received the equivalent pay in cash, that she never did provide Mr. Maynard with the WIC form stating that she needed proof of income and that she never did tell Mr. Maynard that in fact she was applying for public assistance and that's why she needed his signature on the check. But didn't he acknowledge that he knew that there were certain statutory requirements that could have required a check? No, I don't believe that was the case. That was not the case? No, that was not the case. In fact, I think maybe I should do a brief recitation of the facts in this case. This is a case in which Miss Libord received her pay in cash. We're familiar with the facts. And the check was being presented as a receipt for the cash. It wasn't, I gather, some sort of skating? No, no it wasn't. Not at all. In fact, the check had the date that Miss Libord received the money. She received the money on September 30th. It had all the accurate deductions for that particular pay period as well as her net pay. So it would never be negotiated since she had already been paid? Yeah, absolutely. It was not a promise to pay. And it was not signed? And it was not signed. So it was really not a negotiable instrument. It was merely a receipt. The proof, I don't know. I have had housekeepers who worked for me who needed signed letters from me indicating the salary, the income, the gross salary, net salary that they were earning in order to get welfare benefits. And I gather that that basically was what Miss Libord needed. And she was saying she wanted a check form, but there were other forms in which it could be provided. But didn't the district court in essence then say, well, this was the form she needed? And how do we overcome a factual finding like that? Now, I thought Judge Gomez's dissent was quite interesting, but you don't seem to be going there at all. Yes. In fact, we agree very much with Judge Gomez's dissent. Well, I'm sure you do. Yes, we do. And we believe that the problem in this case is that the lower courts create a new standard by which to determine the reasonableness of an employer's order. Well, isn't – that is, again, a factual. But as a matter of law, should, as Judge Gomez said, should the requirements of a third party be a factor to consider in determining whether the request of the employer vis-a-vis the employee, simply to acknowledge that she got paid, is a reasonable request? No, I don't believe that it should be. I believe that the cases that Appellant cited in his brief, as well as the cases that the district court cited in their opinion, they suggest what the standard is to determine a reasonable employer's order. And then that is an order that instructs an employee to perform some type of administrative or work-related task that furthers – excuse me. What I am trying to add into that is the fact, as Judge Gomez pointed out, that we have gone a step beyond the employer-employee relationship in attempting to insert into this the third-party requirement that has nothing to do with whether or not Ms. Liburd is acknowledging receipt of the funds due to her as Appellant. And that this third-party requirement should not be a factor to consider in considering the employer-employee relationship. Yes, absolutely. That was the basis of Judge Gomez's dissent. And that's what I said, and then you sort of disagreed with me. Yes. No, no. I absolutely agree with you that the error was that the court considered this in the context of the requirements and needs of the WIC program, as opposed to looking at the nature, the very essence of what Mr. Maynard had instructed the employee to do, which was to sign a check in order so that he could have administrative bookkeeping. Okay. And it wasn't – in essence, it really wasn't even a check. It was a receipt. No. It was a receipt. It was merely a receipt. And therefore, I know that the Superior Court had mentioned that the method of payment could lead to fraud, but there was no explanation as to how that could be, especially in the context of these facts, and that it really was merely a receipt that Mr. Maynard was asking. It was a reasonable order. And looking at it in the context of the requirements of WIC, especially in a case such as this where Ms. Liburd herself testified that she never told Mr. Maynard or never gave Mr. Maynard the WIC form, never suggested to Mr. Maynard that the reason why she wanted his signature on the check prior to signing the check was that she needed that for the WIC program. Well, your argument is WIC is irrelevant, isn't it? The question of this inquiry is, is it reasonable to ask your employee to sign a receipt? If the answer is yes, then that's the end of the case. Absolutely. That is my argument. If the answer is yes, then that is the end of the case. But then the department fund, and that's what we're reviewing, that's what the district court sitting is the appellate division fund, and what we have to determine is whether or not the department's determination of reasonableness disorder was supported by substantial evidence. That's the essence of why you're here, why we're here in this case. Yes, absolutely. Okay. And it's not so much what the WIC's requirement is, but it's what Ms. Martin-Liburd's requirements were, in that she was saying, I need some signed check. And her only recourse that she concluded at that time, her only recourse to try to get that was, I'm not going to sign the back of the check if he won't sign the front. Yes, that is the case. And the department concluded that on your client's part that that was unreasonable. Yes, that is what the department concluded, that it was unreasonable. But, your honors, I'd like to refer the court to volume two of the appendix, page 176, in which the WIC form states that Ms. Liburd could have verified her proof of income through a number of ways, through a current statement of the most recent gross income from the employer, and also the most recent W-2 form. So Ms. Liburd, in effect, did not need Mr. Maynard's signature on that check, that receipt, in order to verify her income. Was that before the department? And that was before the department. That was admitted into evidence, the WIC form. Yes, your honor. And the second issue that was raised was whether or not the appellate division erred in affirming the award of back pay. There were two arguments that were raised by... How do you get by the waiver question on that? Did you raise that before the department? Yes, it was raised before the department. No, excuse me, not that issue. That issue was not raised before the department. And the reason why it was not raised was because that evidence was not admitted during the hearing. The Department of Labor considered back pay according to unemployment benefits that Ms. Liburd received. However, those unemployment benefits were never entered into evidence during that hearing. So that's what Mr. Maynard had objected to. Are you basically saying that no matter how we decide the first part of this case, it has to go back for a determination of... Oh, absolutely. It would have to go. Yes, it would have to be remanded for some type of determination should the court affirm the decision that she was wrongfully discharged. It would have to go back for some type of determination, especially because according to the Virgin Islands Code, if there's a stay or a continuance in a proceeding, the period of that stay or continuance is deducted from the award of back pay. And in this case, there was a stay, which resulted in an approximately six-year delay of the matter. And there were two motions for continuance that were filed by the respondents for the appellees in this case. And therefore, that period of time, collectively with approximately seven years, that's a substantial period, and that period of time would have to be deducted from the back pay. But the district court does not consider that in its opinion. So most definitely, it would have to be remanded. But of course, we're arguing that the decision should be reversed altogether because it was a reasonable employer order. Your Honors, I see that my time is up. Thank you. We'll have you back on rebuttal. Ms. Laborde? Good morning, Your Honor. Good morning. Tina Gillespie Laborde by way of Legal Services of the Virgin Islands for the appellee, Cheryl Martin-Liebert. My first statement to the panel today is that the standard of review is clear error. It's been long established that the job that's tasked before the judges today is to determine whether the lower court, being the Department of Labor, whether it had substantial evidence to make the determination that it did, to say that Ms. Liebert was, in fact, wrongfully discharged. Furthermore, there can be two permissible views as to what has happened in this case. One trier of fact, looking at the evidence, may say that, in fact, Ms. Liebert may have made an unreasonable request. However, when you look at the totality of the circumstances, all of the evidence that was presented, a reasonable mind could find alter to that opinion, and that's what happened in this case. The hearing officer at the Department of Labor determined that it was not unreasonable for Ms. Liebert to not want to sign the check that was presented to her. In the brief, we noted that, pursuant to negotiable instruments, this check had no value. So what does that have to do with it? The check was being signed as a receipt, not as a negotiable check. Yes, Your Honor. It's not a negotiable receipt. Yes, Your Honor. That being said, Ms. Liebert had explained to her superior, her employer, that she needed, if this was going to be the verification of her employment  for which she needed something. For which she needed public benefits. But isn't it irrelevant whether, if this was being considered a receipt, what does WIC have to do with it? It has nothing to do with it except for the fact that this was the purpose that Ms. Liebert needed the receipt for at that particular time. I mean, she didn't really need it. She thought she needed it. She needed something. And it was, I mean, it was before the Board that there were a number of ways to satisfy the WIC requirements. Yes, Your Honor. Which none of those ways the employer requested or asked if it would be okay to submit to her. Is that burden on the employer? Well, it may not be on the employer, but I believe it aspirated the situation because the notes Let's stop for a moment. Excuse me. If the burden is not on the employer and asking for a receipt as an employer is not violative of Virgin Islands law, then how do we affirm? You affirm on the basis that the ALJ had sufficient evidence, as presented to him at the time, to make the determination that the request was not unreasonable and it was not unreasonable for Ms. Liebert to say that she was not going to sign the receipt. The question is, is the employer's request of the employee unreasonable? Yes. Right? And you'd agree that it's not unreasonable to ask an employee to sign a receipt of receiving cash. You'd agree with that proposition? I would agree with that. Okay. And you would agree that the check in the state that the employer presented it to your client was not a negotiable instrument? Yes. And so you'd agree that your client signing what is not a negotiable instrument would be a receipt in this instance? Not in this instance without the signature of the employer to verify that this was money. That's from the perspective of your client. If the employer looks at the document and says, okay, this receipt is sufficient for my purposes, if you were my employee and I just gave you a piece of paper and said, here's $100. Please sign it. It's just a yellow piece of paper, but you've signed it. It says I received $100. It doesn't look great, but I can give it to my accountant and say it's a receipt. Yes, absolutely. And you'd agree this is a non-negotiable instrument? Absolutely. Okay. So if I take a check and say I've just given you $100. Please sign it. What's the difference between that document and this document? Because this one you have no quarrel with saying it's a receipt. Right, absolutely. So what's the problem? We argue that for the purposes of using it for public benefits and to apply for public benefits, that she would need to have the signature of the employer on the check as well. Or she would need something else. Or she would need something else in the alternative, which goes back to my argument that the employer did not even suggest to her at the time whether she asked for a different document or not. I'm pretty sure it's in the transcript that she requested that she have something, and he refused. Is there an obligation? Is that an obligation that we have to put on the employer in looking at the facts here? I feel that under the circumstances of these particular facts, when you look case by case, that because she needed something to verify for the WIC program, of which she had informed her employer, and because he refused to sign the receipt, the negotiable instrument, or the check that did not become a negotiable instrument, he refused to sign it, which would be not valid for her purposes. Yes, he should have had a burden then to say, I need to give her something valid that will document her employment at that time. What is that burden pursuant to? Just pursuant to the fact that Ms. Leibert had been working for him and had been an employee for almost a year and had no other way to verify her income at that particular point because of the fact that they were using a process of having the employees to sign off on a check. Well, help me. The WDA puts the burden, or I should say the WDA provides nine ways in which it's permissible to take an adverse employment action. Yes. And the one we're focusing on is four, which is reasonable request. Yes. A reasonable request was made of her. Where in that rubric is the burden then under the WDA placed on the employer? The WDA and its promulgation actually prescribes in the rules and regulations, and I can cite that for you, which are promulgated through the legislature, Your Honors, as I look for it. The commissioner can set rules and regulations that are then approved by the local legislature. They're then promulgated in the Roam for Discharge Act, and they therefore govern where the burden of proof comes from, and it is CVIR 2400300 section 77-59. 77-59 states burden of proof. The respondent, which is the employer, if you read the previous references in those sections, bears the burden of persuading the hearing officer or the commissioner, preside at the hearing by a preponderance of evidence that the discharge is unlawful. And were these regulations in place at the time of the hearing before the AOJ? Yes, they were, Your Honor. Had Ms. Leibert, in the past, submitted employment verification forms to WIC? Your Honor, I do not have the answer to that question, but I don't believe there's indication in the record or testimony that was elicited as to prior application. If I may, I'll go on to my next point, which would be that it is stated in both briefs that the McDonnell-Douglas test would be the test to use in terms of deciding the burden of persuasion. That was going to be my second point, and I've just pointed to the promulgation and the code for that, 77-59, actually prescribes who has the burden of proof in these cases. Under the Wrongful Discharge Act, if it's under the administrative hearing setting, which is through the Department of Labor, the McDonnell-Douglas test does not apply. The burden is straight, and it goes straight to the employer to prove that the discharge was lawful. My final point is in terms of the back pay argument that has arisen. I believe that— I'm sorry. I have one question based on what you've just said. In looking at the hearing and looking at the evidence, your point is that Section 77-59 places the burden on the employer to show that it's reasonable and that taking into account whether he, the employer, complies with the WIC is part of that evidence that the hearing officer should be looking at. Yes. If I may? Yes. Okay. In terms of the back pay argument, the appellant has argued here today that there was not a chance to object to the back pay being awarded, and we beg to differ on that point. If the court would look to page 19 here, the Joint Appendix 2 at pages 113 to 114, there was information and requests presented by the legal representative of Cheryl Martin-Liebert at the hearing in regards to a determination of reinstatement and back pay with a certain amount, and that amount actually stated minus the unemployment compensation. After that point, the appellant raised the question to the appellee's unemployment insurance, to the hearing officer, stated that it would be verified, and the appellant responded okay. We argue that at that point that should have been a signal to the appellant that he should have raised an objection. No objection was raised at that time. We also argue that as far as the back pay award goes, we wish for the court to look towards the collateral source rule. We do feel that in terms of what has happened in this case, although the appellee and the claimant at the hearing actually asked to be reinstated with back pay minus the unemployment insurance compensation, that that is contrary to law. You don't raise the waiver issue in your brief though, do you? We raised it in the last section, the argument at the end. We raised it, I believe, page 19, but we didn't raise it in pursuant to say that the claimant would be waiving the rights to have the unemployment insurance, Your Honor. I understand that part of it. But it isn't with all the years that have ensued here, whose ever fault it was that this much time has passed, regardless of how we decide, don't we need to send this back to the department to determine the amount of one, back pay, and two appropriate offsets? Yes, Your Honor. With also the recommendation we would ask that unemployment insurance would not be included as interim earnings as prohibited by federal. So you want the collateral source rule to apply to unemployment? Yes, we do. To roam for discharge, back pay. Okay, but you don't have a problem with the remand for determining how much money is there? It's a step purpose, Your Honor. Okay. We concede that it does need to be remanded because we actually are arguing that any claimant in this situation, pursuant to this code, if they are successful, the employer has not met the burden of proof and it's deemed that they were lawfully discharged, pursuant to the statute, they're entitled to reinstatement and back pay. We're only arguing that the back pay provision in the rules and regulations is contrary to law and that would be pursuant to the collateral source rule. Okay. Thank you, Your Honors. And we'll conclude. The Board. And Ms. Hanfeld? Thank you, Your Honors. Let me ask you a question before we begin. Yes. Had Ms. Leibert, while she worked for Mr. Maynard, ever submitted any salary verification form to VIST? Yes, Your Honor. The answer to that question can be found in Volume 2 of the appendix at page 51, in which Ms. Leibert indicated that the only time she ever claimed to have an inadequate record of her pay was after she was discharged. But had she, while she was working for Mr. Maynard, had she submitted other verification forms to WIC? There was no evidence that she had submitted other verification forms to WIC while she was working with Mr. Maynard. In fact, on— Had he ever submitted them for other employees? No. Or provided information for other employees? Oh, had Attorney Maynard ever— Well, Attorney Maynard testified during the Department of Labor hearing that if any of his employers asked him to submit information or for information or proof of income, he had provided them to them, but that in the instance of Ms. Leibert, she had not made that request. In fact, I would like to address the statement that was made by the appellee that Ms. Leibert requested on that date from Mr. Maynard that he provide her with some proof of income and that Mr. Maynard refused. That is absolutely not correct. In fact, the testimony was quite to the contrary. The testimony was that at the time that Ms. Leibert was boisterously refusing to sign the check, she had never told Mr. Maynard that she required the check to verify proof of income. She merely stated that it was an invalid check. But isn't that—I mean, then at the hearing she said she had, isn't that a question of credibility that was up to the Labor Board to determine and not for us? Who said what to whom? Well, that is a question of fact. However, I think that this Court should consider that Ms. Leibert also testified that she never gave Mr. Maynard the WIC form, that she felt that it was none of his business. So we're arguing that the WIC form actually is irrelevant to the determination of whether Mr. Maynard's order or instruction was reasonable. But if the Court does consider the needs and the requirements of third parties in determining whether or not an employer's order is reasonable or unreasonable, I think that that's something that should certainly be taken into account. Is that in the record that Ms. Leibert testified that she had never given a WIC form to Mr. Maynard? Absolutely, Your Honor. Judge Roth, that is in Volume 2 of the appendix, page 68 and page 107 through 108. Does the record indicate why Mr. Maynard didn't just agree to sign the front of the check as a result of the request? Yes. The record does suggest that. Really, I would refer the Court to Volume 2 of the appendix, page 18 and 109 of Volume 2. Mr. Maynard states that during the time when he gave Ms. Leibert the check to sign as a receipt, Ms. Leibert only argued that she wasn't going to sign the check because his signature was not on it and it was an invalid check. Well, it was not an invalid check because it was merely a receipt. At that time, in fact, during the Department of Labor hearing, Mr. Maynard states several times that the very first time that he was made aware of the WIC program or Ms. Leibert's public assistance was at that hearing and at no time before. That's not my question. My question is, does the record show why Mr. Maynard didn't sign the front of the check? Why he did not sign the front of the check? Why he refused to sign the front of the check. Well, I believe what happened was Ms. Leibert, this is in the record, Ms. Leibert was provided the money in cash the previous day on September 30th with a copy of the check. So when Mr. Maynard approached her, the question was, you know, you've received the pay in cash, would you please sign the check so that I can have some receipt for my records that you received the pay in cash? And she said no. And she said no? Yes. And she said, I'm not going to sign the back of the check until you sign the front. Absolutely. And that's basically where it ended. Okay, but my question is, there's nothing in the record to show why Mr. Maynard wouldn't sign the front. Well, because Mr. Maynard, well, the only testimony was that Mr. Maynard insisted that it was not an invalid check. That was the only issue at that point. You know, it's just a receipt. So there's nothing to indicate why he didn't sign it except for the fact that it was a receipt. Didn't he say something to the effect that no one's going to make me sign the check if I don't want to? I don't know. I believe Ms. Leibert may have said that he said no one is going to make me sign a check. But it was not a check. It was a receipt. If he had signed the check, it would then be a negotiable instrument payable to Ms. Leibert for funds that she'd already received, right? Well, it wouldn't be a negotiable instrument if he had signed the check because according to the Virgin Islands Code, a negotiable instrument is a promise to pay a fixed amount. And in this case, Ms. Leibert already had the cash. She was already paid, so there was no promise to pay. If he signed it, it was a good check for that same amount that she'd already been signed. Yeah, it would have had he given her the check, and then she could presumably deposit it, and then that money would have been deducted from his account, yes. Okay. We understand that. That is true. So it probably would be better for her to sign as opposed to him signing and then giving her the check because then she would have cash, and she would also have a check with his signature. All right. We understand your position. Thank you. We thank both counsel for excellent arguments, and we'll take the matter under advisement.